THADDEUS STERLING *against* AARON ADAMS and HANNAH, his wife.

WRIT of error.

This was an action brought by *Sterling*, against *Adams* and his wife, on the statute for preventing and punishing vexatious lawsuits.(a)

The declaration alleged, that said *Hannah*, whilst sole, and before her intermarriage with said *Aaron*, to wit, on the 23d of *July*, 1801, wittingly and willingly, with

want of it in an action for a vexatious suit.

*If in an action of slander, the defendant admits the speaking of the words, but justifies on the ground that they were true, he does not thereby admit probable cause, so as to preclude him from showing the*

A person may be liable for prosecuting, after he is of full age, a suit commenced by him maliciously, and without probable cause, while an infant.

In an action for a vexatious suit, the plaintiff having stated, that in the original suit, he recovered his costs, alleged, that *he was most unjustly imprisoned on said suit, for the space of twenty-four hours, and in defending the same expended large sums of money, to wit, the sum of 200 dollars in employing counsel to defend; also the sum of 200 dollars in paying witnesses, and maintaining them when attending on the trial; also the sum of 100 dollars in making various journeys to procure testimony, and in attending on the trial;* without showing that such damages exceeded the costs recovered: Held, this was a sufficient allegation of damages.

An allegation that words charged as slanderous were *known* to the party and to the public in general, *to be true,* is a sufficient allegation of their truth.

(a) *Stat. Conn.* tit. 167.

June, 1809.

STERLING
v.
ADAMS.

intent most unjustly to vex, and injure the plaintiff, and without any just or legal foundation, instituted and prosecuted, by the name of *Hannah Morehouse*, against the plaintiff, a certain action on the case, for slander. The process was by attachment. The plaintiff was described as a minor under the age of twenty-one years, suing by the advice and with the consent of her father and natural guardian. The words charged as slanderous were, in substance, that the plaintiff had the venereal disease, and had given it to the defendant's son. This action was returned to the *Fairfield county court*, held, on the third *Tuesday* in *November* following. The general issue was pleaded, and the cause continued to an adjourned term, held on the last *Tuesday* of *February*, 1802, when the plaintiff appealed the cause to the *superior court*. It was continued from term to term in that court, until *January*, 1804, when the parties joined issue on the plea of *not guilty*, and went to trial to the jury. After witnesses had been sworn, and had testified, on both sides, the plaintiff suffered a nonsuit. Whereupon the *superior court* rendered judgment in favour of the defendant to recover his costs. The declaration in this case then averred, " That said action, in favour of said *Hannah*, was commenced by the wicked instigation of her, the said *Hannah*, who arrived at the age of twenty-one years on or about the 1st day of *November*, 1801, and before the said writ in favour of the said *Hannah* was returned to said *November county court* in the year 1801; and said *Hannah*, after she arrived at the age of twenty-one years, and before her intermarriage with said *Aaron Adams*, carried on and prosecuted said action in favour of said *Hannah*, so far as the same was carried on as aforesaid, against the present plaintiff, without any just, or reasonable, or probable foundation, and with intent and design most unjustly to vex, trouble and abuse the plaintiff in the premises; for that the said *Hannah* well knew, at the time of commencing said suit, and at the

time she carried on the same as aforesaid, that if the then defendant had spoken the words as alleged in her declaration, they were true; and said charges imputed thereby were long before known to her, and to the public in general, to be true." The declaration further alleged, " That the plaintiff was most unjustly imprisoned on said suit for the space of twenty-four hours; and, in defending the same, expended large sums of money, to wit, the sum of two hundred dollars in employing counsel to defend; also the sum of two hundred dollars in paying witnesses, and maintaining them when attending on the trial; also the sum of one hundred dollars in making various journeys to procure testimony, and in attending on the trial, to the damage of the plaintiff," &c.

To this declaration there was a demurrer.

The *superior court* adjudged the declaration insufficient.

The plaintiff brought a writ of error to this court, at the term in *June*, 1808; when the cause was argued by *Gould*, for the plaintiff, and by *Daggett* and *Hatch*, for the defendants. The court being divided in opinion, continued it to advise, and ordered a further argument at this term.

*Sherwood* and *Hatch*, in support of the judgment below.

The action in this case, is founded upon the statute for preventing and punishing vexatious lawsuits.(a) But that statute creates or defines no new injury. Of course, the questions which arise upon this record are to be determined upon common law principles.

(a) *Stat. Conn.* tit. 167.

June, 1809.<br>STERLING<br>v.<br>ADAMS.

June, 1809.

STERLING
v.
ADAMS.

To constitute a civil suit vexatious, in a legal sense, three requisites are indispensable, *viz.* malice, want of probable cause, and damages either actually fallen, or else inevitable. *Esp. Dig.* 527. 529. 6 *Mod.* 25. The inquiry now is, whether the plaintiff shows the suit, of which he complains, to have been thus vexatious.

1. For the defendants, it is contended, that the declaration contains no sufficient allegation of damages.

In the first place, no precise and certain rule is given, by which damages are to be assessed. The declaration admits, that costs were recovered in the original suit; but does not show, to what sum they amounted. A claim is now made for the extra costs in that suit; it ought, therefore, to appear, that the actual costs exceeded the taxed costs, and by how much; otherwise, it will be intended, that the taxed bill was a full satisfaction; or, at any rate, as the one bears no stated proportion to the other, it cannot be ascertained how great a part remains unsatisfied.

To the claim on account of the imprisonment alleged, a distinct answer will be given.

In the second place, no damages whatever are set forth, for which, under the circumstances of this case, a recovery can be had. The plaintiff avers, first, that he has been damnified, by imprisonment, and, secondly, that he has suffered expense.

As to the imprisonment: This being an action against husband and wife, for a vexatious suit instituted and prosecuted by the wife, *dum sola;* the present inquiry must be, whether she was liable at the time of the inter-marriage. From the plaintiff's own showing, it appears that, at the commencement of the original suit, the wife

was a minor; the suit was commenced by guardian; the writ bore date the 23d of *July*, 1801, and the plaintiff was arrested on the same day. It further appears, that the wife came of full age on or about the first of *November*, 1801; so that the arrest and imprisonment took place during her infancy. Upon these facts, the general question arises, whether an infant is liable to an action for a vexatious civil suit? For, if not liable generally, in this action, it cannot be claimed, that the wife could have been subjected, for any vexation or damage sustained, prior to her completing full age.

Here we are told, that an infant may be liable in this action; because, as it is said, he has it in his power to commit the injury. This is denied. We are not now considering the case of an action for false imprisonment; for which an infant is unquestionably liable, as for all torts, which are *vi et armis*. But an infant is not capable of commencing, or prosecuting a suit. If plaintiff, he must appear by guardian or *prochein amy;* if defendant, by guardian; but, in no case, can he appear by attorney; for the appearance of an infant's attorney is held to be without warrant. In *England*, the guardian, by whom he appears, is assigned either by the court, or by writ out of chancery. Both here and in *England*, the guardian has his warrant from the court, and not from the infant. 3 *Bac. Abr.* 148, 149. and authorities there cited.

An infant being thus incapable of prosecuting a suit, is it not a contradiction, in terms, to say, that he may prosecute vexatiously? Besides, the guardian, as we have seen, acts independently of the infant, deriving his powers from the appointment of the court. Can the infant be subjected for acts done in pursuance of such appointment, or for an abuse of the powers which it confers? The infant could neither cause, nor prevent, nor in any respect control the prosecution. How then

June, 1809. can malice be imputed to him? Indeed, he is not *sui*
STERLING *juris;* the law presumes him wanting in discretion. Shall
v. he, then, be holden to judge of probable cause? No
ADAMS. precedent of an infant's liability in this action can be
found. Indeed, it does not appear, that it was ever at-
tempted to subject an infant for this injury.

As to the expense: A claim is here made to recover
for those items of expense, which, by law, are taxable in
a bill of cost in favour of the prevailing party.

In an action for a malicious criminal prosecution, ex-
pense alone is a sufficient ground of damage; and the
reason undoubtedly is, that no costs are recovered by
the party prosecuted. *Esp. Dig.* 528. Not so, however,
in an action for a vexatious civil suit.

In such case, if the action be instituted before a court
of competent jurisdiction, be prosecuted in the ordinary
manner, and be not attended by a malicious arrest and
holding to bail, there is not any ground of damage which
the law recognises. At any rate, it is claimed, that
those items of expense which are ordinarily taxed in
bills of cost, cannot be gone for, though the actual cost
do in fact surmount the taxed cost. The forms of de-
claring, in this action, seem fully to warrant this con-
clusion. It is necessary that damages be specially
alleged. *Savil* v. *Roberts*, 1 Ld. *Raym.* 379, 380. S. C.
1 *Salk.* 13. Why is this required? Expenses are
always incurred in defending a civil suit; and, so far
from being a special, they are an ordinary grievance.
Indeed, why is it not actionable simply to bring a ground-
less and malicous civil suit? It is because the party
prosecuting is amerceable *pro falso clamore*, and is liable
to cost. The judgment ascertains and remunerates
the claim of the defendant. Thus, the forms of the
law in this, as in other cases, serve to show what the
law is.

Again, no case can be found, in which a recovery has been had, for those items of expense which are the subjects of allowance in bills of cost. All the instances, in which it is laid down by *Espinasse*, and other elementary writers, that this action lies, are cases, in which either no costs could be taxed; or where no costs could be taxed against the party guilty of the vexation or where the ground of damage was some grievance, which is not the subject of allowance in the taxation of costs. *Esp. Dig.* 525, 526, 527. *Dub.* edit.

First, where no costs could have been taxed. This happens in all cases, where, as in *Atwood* v. *Monger, Style,* 378. it is apparent from the record, that the court has not cognisance of the cause ; or where, though the court have cognisance of the subject matter, its jurisdiction extends not to allow costs, as in *Hocking* v. *Matthews,* 1 *Vent.* 86. which was an action for suing the plaintiff in the spiritual court ; or where the vexation is done under colour of final process, as in *Watern* v. *Freeman, Hob.* 260. 266. where the defendant had sued a second *fi. fa.* and sold the plaintiff's goods, though he had before taken goods under a former *fi. fa.*

Secondly, where no costs could have been taxed against the party guilty of the vexation. Such was the case of *Thurston* v. *Eunnes, March,* 47. where a stranger, without the privity of the person to whom a sum of money was due, sued out a writ, and arrested the debtor for it.

Thirdly, where the damages are of such a nature as could not have been the subject of allowance in the bill of cost. This is the case in all actions for maliciously holding to bail. Under one or other of these heads, it is believed, may be classed all the cases of

June, 1809.   actions for vexatious civil suits, to be found in the
————          books.
STERLING
v.
ADAMS.

Further, the elementary writers all agree in assigning
as the reason, why it is not generally actionable to
bring an unfounded suit, that costs are recoverable.
*Esp. Dig.* 525.   *Gilb. L. Ev.* 621. 624.   In this, many
judges of the highest reputation have concurred, and
expressly made it the foundation of their judgments, as
may be seen on a reference to the cases already cited.
The instances in which this action lies, are treated as
mere exceptions to the rule; because, in those instances,
the reason of the rule ceases.

Indeed, in one case, that of *Rogers* v. *Illscombe*, [MS.
cited *Esp. Dig.* 535, 536.] this point seems to have been
directly decided in our favour.   An action was there
brought for a malicious holding to bail.   The plaintiff
offered, as evidence of part of her damages, the costs
she had been put to, in defending the former action; to
which it was objected, that those costs had been taxed
upon that action.   On the other hand, it was urged, that
as the extra costs always exceeded the taxed costs, they
might go for these; but Justice *Buller* refused to re-
ceive the evidence.   There was, indeed, another distinct
ground of objection; but we are informed, that " the
judge rejected the evidence apparently on both grounds."

2. The plaintiff's declaration shows, that there was
a probable cause for the original suit.   It admits the
slanderous words to have been spoken, but alleges them
to have been true; and it avers, that the first action was
groundless only for the reason, that the defendant in that
action, had a justification.

What shall be considered as probable cause, though a
question of law, seems not to be very precisely defined.

Our inquiries on this point must be principally aided by detached cases and general rules.

In the ancient proceedings in conspiracy, it is said, reasonable suspicion was probable cause. *Per Cur.* in *Sutton* v. *Johnstone*, 1 *Term Rep.* 507.

In one case [6 *Mod.* 25.] it is laid down, that the prosecution must be " without any colour of cause," to lay the foundation of an action.

In *Reynolds* v. *Kennedy*, 1 *Wils.* 232. it was held, that an erroneous sentence of condemnation by the sub-commissioners of excise, which sentence was alleged to have been " most justly reversed" by the commissioners of appeal, nevertheless showed a foundation for the defendant's prosecution.

In *Smith* v. *M'Donald*, 3 *Esp. Rep.* 7. the defendant in the original prosecution was acquitted, without calling a witness. He thereupon brought his action against the prosecutor; in which, however, Lord *Kenyon* directed a nonsuit, remarking, " that if the evidence offered to the jury, at the trial of the indictment, was sufficient *to cause them to pause*, he should hold it a probable cause." From these and other authorities, it is to be collected, that a very slight matter amounts to probable cause, and that courts hold a severe hand upon this sort of actions.

Whether in slander, if the speaking of the words be admitted, and the defendant justify on the ground that they were true, the action shall be held to be without probable foundation, is now the question.

It is readily conceded, that this point has never arisen, or been determined upon this precise state of facts; but

in analogous cases, in cases decisive of the principal one, it is believed to be well settled. From all the adjudications on the subject, this rule or principle seems plainly deducible, that where the defence in the first suit or prosecution is merely some collateral matter set up by way of avoidance, it implies or admits probable cause.

In the case of *Waterhouse* v. *Bawde*, *Cro. Jac.* 133. it was fully recognised, or rather laid down almost in *totidem verbis.* The court there held, that it was not actionable to sue in the spiritual court for any matter, which was properly demandable there, though the plaintiff had no cause of action; but if it appear *on the face of the libel*, that such matter was not properly suable there, and that the court hath no jurisdiction, then " action on the case lieth." " But," the court say, " if the suit be there for a thing demandable and recoverable there, by any thing, which appears by the libel; and by *the defendant's plea, or by any collateral matter, he is barrable* there, no action on the case lieth."

The determination in the case of *Fish* v. *Scott* is still more directly applicable to the point in debate. There the first prosecution was for an assault and battery, and the defence, that the assault was committed by the defendant *se defendendo.* For this prosecution action was brought, and came on to be tried before Lord *Kenyon* at *Nisi Prius.* But, upon the bare statement of the case, his lordship interposed and directed a nonsuit, upon this ground, as well as another, that self-defence being mere matter of justification, admitted the assault, and of course probable cause. This decision must have been acquiesced in; for it does not appear ever to have been brought up for revision at *Westminster-Hall. Peake's N. P. Cas.* 135.

The same doctrine was settled in the case of *Sutton*

v. *Johnstone*, 1 *Term Rep.* 493. 784. a case which was decided after repeated argument, and upon the fullest consideration. It should be added, that although there were opposite decisions had in this case before the two different courts, where it was tried in the first instances; yet, upon the point on which it finally turned, there was no diversity of opinion among the judges. The case was as follows: An action was brought for a malicious prosecution before a court-martial, for an alleged disobedience of orders. The declaration set forth the proceedings and sentence of the court-martial; from which it appeared, that the court found the fact of *disobedience*, but also found, that the disobedience was justified. The defendant in the original prosecution was acquitted therefore solely upon the ground of his justification; and thereupon the question arose in this action, whether, as the justification was the sole ground of acquittal, the declaration did not admit a probable cause? The court, upon a writ of error in the *exchequer chamber*, held that it did, and therefore adjudged the declaration insufficient. This judgment was afterwards confirmed in the *house of lords*.

An attempt is here made to distinguish this case from the one at bar. In *Sutton* v. *Johnstone* it is said, that the prosecutor could not have been taken to know the facts which constituted the justification, and this is inferred from certain loose expressions, which fell from the bench.

To this it may be answered, that the science of the defendant as to these facts was expressly charged in every one of the four counts in the declaration. [1 *Term Rep.* 494, 495. 500, 501.]

But further, those averments, however necessary or proper, had not, and could not have had, any possible

June, 1809. connection with the question upon which, that case turn-
ed. The question was, does this declaration show a
want of probable cause? Science is properly averred in
such a case only to show malice; but it was in that
very case, that Lord *Mansfield* and Lord *Loughbo-*
*rough* remarked, that " from the most express malice, the
want of probable cause cannot be implied." [1 *Term*
*Rep*. 545.] Had the averment of malice been omitted,
such omission would, indeed, have furnished a distinct
topic of objection to the declaration; but, whether made
or omitted, the question as to probable cause would still
present itself in the same shape. The very conclusion,
therefore, against which their lordships seemed most
solicitous to guard, is now attempted to be supported by
their authority.

STERLING
*v.*
ADAMS.

It should here be observed, that, in each of the two
cases last cited, the plaintiff had far more colour of claim,
and the application of the rule, by which they were
decided, was more apparently technical and arbitrary
than in the present. In *Fish* v. *Scott*, the battery was
supposed to have been committed in self-defence; in
*Sutton* v. *Johnstone*, the disobedience was justified by a
physical necessity. In neither case, was there in fact
any criminality; though in each it was held there was
probable cause of prosecution. No reference is here had
to the second point, on which the judge expressed his
opinion in the case of *Fish* v. *Scott*. There was said,
indeed, in that case to be two distinct assaults ; one of
which only was committed in self-defence; but the judge
expresses a clear opinion, that each constituted a proba-
ble cause. In the case before the court, the defence in
the original suit was such as admitted guilt as well in
the eye of the law, as of morality ; for to utter slanderous
words, with no other excuse or justification than that
they can be proved to be true was never reckoned in-
nocent. The law allows such a justification to avail as a

defence, " in compassion," as it is truly said, " to men's infirmities." [4 *Bac. Abr.* 480.] But never was it foreseen, that these *infirmities* would be alleged as meritorious, or made the foundation of a claim.

The rule, here insisted on, is further supported by the authority of Chief Justice *Parker*. In *Jones* v. *Givins*, his lordship advances it, as an undoubted proposition, that " the determination" (*i. e.* the determination of the original prosecution) " must be such as does not admit a reasonable cause for the prosecution; as if a pardon be pleaded, which admits in some sort guilt, however is quitting the vindication of innocence, or justification, which admits the fact, and consequently reasonable cause of complaint." *Gilb. Cases in Law and Equity*, 215. The defence in the suit now claimed to have been vexatious, falls within both the exceptions here stated. In the first place, it " admits in some sort guilt ;" and in the second, it is a mere matter of " justification, which admits the fact, and consequently reasonable cause of complaint."

But it is said here, that the justification in this case is substantially a denial of the cause of action, and no more admits a probable cause than the general issue; for that, to constitute slander, the words spoken must be false.

It is not easy to conceive how this justification differs from any other; every sufficient plea of matter of justification *ex vi termini*, effectually denies or repels the liability of the defendant. This proposition, therefore, applied as it is in the argument, levels, at one blow, all the authorities cited for the defendant; authorities, which have never once been denied or doubted in the books. In *Sutton* v. *Johnstone*, the justification established, that the disobedience was not wilful, and therefore not criminal. In prosecutions for assaults, committed in self-defence,

as in *Fish* v. *Scott;* or under authority, as in the common cases of sheriffs and their officers; the justification, in the same sense, denies the cause of prosecution. So, too, a plea of pardon effectually destroys any just liability to prosecution, or punishment. But is this court now prepared to overrule the well settled doctrine in all these cases?

It is not surely intended, by this objection, to say, that the truth of words charged could, by the common law, be given in evidence under the general issue; or that a special plea, setting up a justification on that ground, would amount to the general issue. The rule on this point is too familiar to be repeated. (*Esp. Dig.* 517.)

Again, it is said, that it would have been competent, under this declaration, to have proved, by the confessions of the plaintiff, in the action of slander, that her suit was instituted and prosecuted, for the sole purpose, and with the single intent to vex. This is admitted; but what follows? Simply, that the action was prosecuted with malice; not that it was without probable cause. Similar confessions might be proved in very many cases, where the cause of action is undisputed. That such proof would have been admissible, therefore, goes merely to show, that malice is sufficiently stated; but the objection to this declaration is not for the want of an averment of malice.

3. But we contend further, that even the justification in the action of slander is not sufficiently set forth in this declaration. For aught that appears, the plaintiff in that action might have prevailed, had he gone to trial, on the issue closed. The words charged are admitted to have been spoken; and it is not alleged, in any traversable form, that those words could have been proved to be true, or that they were true in fact. It is merely

averred, that the several charges were known, by the
plaintiff in that action, " and to the public in general, to
be true, and that they imported no defamation," &c.
From this, it cannot be inferred, that there was one
competent witness, who possessed a knowledge of the
truth of those charges; much less, that the then defend-
ant could have availed himself of the testimony of such
witness on the trial of that action. In whatever light
such an allegation might be viewed, after verdict, it is
believed to be ill on demurrer.

It should here be remarked, that actions of this sort
are not favoured. To bring a civil suit is " a claim of
right," and there would be much danger in restricting
it within too narrow limits. Cases of extreme hardship
may undoubtedly be imagined ; oppression, under colour
of law, may, in some instances, be practised with impu-
nity. Where there is even an undoubted right of action,
it may sometimes be made to serve the purposes of
vexation. But courts, in settling the limits of this
action, have been obliged to balance between opposite
evils; between the evils resulting from a too loose and
a too restricted definition of the injury which it is in-
tended to redress. It is not now the subject of inquiry,
whether the rules already established are the most per-
fect that can be devised or imagined; but if that inquiry
could properly be instituted here, it would not be difficult
to prove, that they are founded in the highest wisdom.

*Gould* and *R. M. Sherman*, contra.

It is admitted, that a person must be guilty of a very
gross abuse of the right of suing, before he will be liable
for vexation. To the exercise of that right great in-
dulgence is given. If the object of the plaintiff be, in
any degree, to obtain right, his temper is not to be re-
garded. *When all the facts known or believed by the*

June, 1809. *plaintiff, or existing without his knowledge, would afford*
*any probability, to an honest mind, that there ought to be a*
STERLING *recovery,* probable cause in law exists; and a suit, how-
v. ever unsuccessful, injurious or vindictive, will entitle the
ADAMS. defendant to no remuneration. Here is often great wrong,
and no remedy. It is *damnum absque injuria.* Sound
policy, however, does admit redress for injuries done
by an abuse of the right of suing, on principles which
do not abridge its legitimate exercise. In such case,
malice, damage, and want of probable cause, must con-
cur. Thus far we agree. It is also not denied, that the
first requisite exists in this case. But the defendants
claim, that the declaration shows no *damage,* and admits
*probable cause.*

As to the former it is contended by the defendants,
that, if legal damage be alleged at all, the averments do
not show the precise amount; and, therefore, that it
does not appear, but the whole was satisfied by the bill of
cost. But the items of taxable cost are ascertained
by public law, of which the court can take notice without
averment. For example: The most which can be
taxed for counsel or attorneys is 1 dollar and 34 cents, in
the county court, and 2 dollars and 68 cents, in the supe-
rior court. But here the plaintiff alleges, that he has ex-
pended 200 dollars in employing counsel to defend. Is
not the *legal* inference from this averment, that the plain-
tiff had no remuneration, in the taxable costs, for what
this sum exceeds the amount prescribed by statute ? The
defendants admit that the allegation of imprisonment is
not answered by the objection; but contend, that it hap-
pened during the infancy of the plaintiff in that action.
It is hardly claimed, that she wanted legal discretion to
commit the injury. At the age of seventeen years, an
infant is chargeable for malicious words,(a) and, indeed;

(a) 3 *Com. Dig. Enfant,* D. 4.

" at the age of fourteen the law presumes the human mind has acquired a complete sense of right and wrong."(a) She was more than twenty. But the principal argument is, that she had not the *control* of the action. It was, however, " commenced by her wicked instigation." If a person causes me to be prosecuted *criminaliter*, maliciously and without probable cause, it is not denied that he is liable in damages, although he could not commence or control the prosecution. If I destroy by an agent over whom I have not *legal* authority, am I therefore not responsible?

As to the *expense*, it is further insisted, that we claim a recovery for taxable cost. This objection has already been obviated. It is clear we cannot recover a double satisfaction. But does it follow, that we cannot recover for expense at all? In the case of *Savil v. Roberts*, the plaintiff declared, that " the defendant caused the plaintiff to be maliciously indicted of a riot, of which he was acquitted, by which he was put to *great expense*," &c. without specifying the damage *particularly;* which was holden good in that case, but that it would not be good in an action for a vexatious *civil* suit; because, as appears by the whole case, in the latter the damages must be specially alleged, else the cost recovered would be presumed 'a satisfaction. This case proves, that if the damages *are* specially alleged, no such presumption can exist. So far as the reasons in that case are grounded on the amercement *pro falso clamore*, they are inapplicable here. In *Esp. Dig.* 527. *Dub.* edit. mentioned by the defendants' counsel, *Waterer v. Freeman* is cited, in which it is expressly laid down, that " if a man sue me in a civil suit, yet if his suit be *utterly without ground*, and that *certain* *known* to himself, I may have an action of the case against him for the undue *vexation and*

(a) 1 *Hawk. P. C.* L. note (1).

*damage* that he putteth me unto by his ill practice, *though the suit itself be legal*, and I cannot complain of it." Here is no malicious holding to bail, or want of jurisdiction in the court, or of right in the defendant to recover cost, or abuse of final process. Those circumstances, it is admitted, might render a suit actionable, or aggravate damages; but they are nowhere said to be essential. The *nisi prius* case of *Rogers* v. *Illscombe* was an action in which maliciously holding to bail was the *only* damage alleged. It was well objected, for that reason, that *costs* could not be proved as a ground of damage. It was also objected, that *these* costs had been *taxed* and *paid* to the plaintiff, and that she could not go for them *again*. The judge rejected the evidence " *apparently* on both grounds." Certainly, both were very solid grounds. It was also claimed, that she might go for the *extra* costs ; but to that the want of sufficient averments was particularly opposed.

It is next contended by the defendants, that the plaintiff has shown probable cause on the face of the declaration. What they claim as to the *degree* of probability, which is sufficient to shield a defendant, has been already admitted. The *least* is sufficient. But that the want of probability *must appear by the plaintiff's own showing*, is not a sound proposition. Whenever he knows, that, on the whole, he has no right to recover, it is very immaterial in what form, or when, this is presented to the court; whether in the declaration, or a special plea, on his own evidence, or that of the defendant. The position is nowhere advanced. In *Waterhouse* v. *Bawde*, no more is decided than the plaintiff here admits, *viz.* that to sue, without cause of action, is not, *per se*, actionable; but to sue before a court which has *no cognisance of the subject*, is, *of itself*, actionable. For example: Should I sue before a justice of the peace on a note with two witnesses for thirty-five dollars, and the defendant

show, by his plea, that one of them had become infa-
mous, or otherwise disqualified, and thereby take away
the jurisdiction of the court, this record would not, *of
itself*, prove cause of action; but had I declared on a
note for forty dollars, the suit, *of itself*, would have been
an actionable injury. In the former instance, judgment
by default would have been *valid*; in the latter, *void*.
Indeed, the doctrine in *Waterhouse* v. *Bawde* is as ap-
plicable to an action of trespass for false imprisonment,
as to a suit for vexation. For, in the instance first put,
the record would justify an arrest of the defendant; in
the latter, it would not. On attentively reading the case
of *Fish* v. *Scott*, it will appear obvious, that nothing
more was intended relative to the point in question, than
that the circumstances of *that particular case* constituted
probable cause. Lord *Kenyon* does not intend to ad-
vance the general proposition, that probable cause al-
ways exists where the defendant is put to justify. Sup-
pose a criminal publicly convicted and punished for
theft; or confined in Newgate prison, has he probable
cause of action against all those who mention the cir-
cumstance? Was publication of such a fact " never
reckoned innocent?" Would the publisher be justified
merely " in compassion to men's infirmities?" Would
his defence " admit, in some sort, guilt?" Would there
even be any truth in the averment in the declaration,
that the words spoken were *false* and *malicious?* But on
this point the law is not silent. In *Waterer* v. *Freeman*,
it is expressly laid down in these words: " I may have
an action on the case against him that sues me *against
his release*, or after the money duly paid; YEA, *though it
be on a single obligation*." These last words are very
emphatical. On an obligation with condition, the money
paid might have saved the forfeiture, and the plaintiff
never had cause of action at all. But on a single obli-
gation, the payment and release are mere matter
of avoidance. In the whole language of the passage

read, great pains is taken to be explicit on this point. If such an obligation be not conclusive of probable cause, much less can the speaking of words which are true.

The case of *Sutton* v. *Johnstone* is strongly corroborative of the same law. The plaintiff, it is true, was ultimately defeated, because probable cause appeared on his declaration. He failed, however, because probable cause *existed*; not, as is contended, because the plaintiff *was put to justify* before the court-martial. The declaration alleged, that the defendant *well knew* the facts on which the plaintiff justified; but the court held, that those facts, though considered by the court-martial as a justification, were, as stated in the declaration, so complicated, and the inference of the plaintiff's innocence so doubtful, that the defendant might, very honestly, have *believed* the plaintiff guilty. On this ground, and this only, they held that probable cause appeared on the declaration itself. This is apparent, not from any loose opinions which fell from the bench, but from the deliberate, written reasons, of Lord *Mansfield* and Lord *Loughborough*. Their language is: "The question, then, tried by the court-martial was, whether the plaintiff was justified in not obeying, by physical necessity. Now, there cannot be a question more complicated. It involves the precise point of time; the state of the winds; the state of the ship; the position of both fleets. It requires great skill in navigation There is no question likely to excite a greater variety of opinions." Again : " Under all these circumstances, it being clear that the orders were given, heard, and understood ; that in fact they were not obeyed; that, by not being obeyed, the enemy were enabled the better to sail; that the defence was, an impossibility to obey—a most complicated point— *Under all these circumstances*, we have no difficulty to give our opinion, that, in law, the commodore had a pro-

bable cause to bring the plaintiff to a fair and impartial
trial." Now, why are *all these circumstances* thus minute-
ly detailed and relied on ; their complicated and ambigu-
ous nature made the *basis* of opinion; if that opinion
rested, not on their nature, but on their being presented
*by way of justification.* The opinion on this point
amounted to no more than this, *viz.* " that, however
malicious *Johnstone* might have been, as a full know-
ledge of all the facts stated in the declaration might
have afforded, to an honest mind, some probability, that
Captain *Sutton* ought, in justice, to be convicted, there
was probable cause in law." If, in the case now in ar-
gument, all the facts stated in the declaration would
afford some probability, to an honest mind, that the de-
fendant *Hannah* ought, in justice, to have recovered
damages of the plaintiff, then, however malicious she
might have been, the declaration is insufficient. Surely,
the facts are not of that complicated or ambiguous na-
ture, which would admit such a probability.

It is further contended by the defendants, that it is
not alleged, either that the words were true, or that
their truth could have been proved on *that trial.* That
they were true is essentially involved in the allegation
that the defendant, *Hannah,* knew them to be true.
What does not exist may be *believed,* but cannot be
*known,* to exist. As to the other allegation, if it must
be presumed, that the " public in general," who also
knew them, were all incompetent witnesses, yet, as no
allegation of the sort is necessary, the declaration is
good without it. Suppose a promissee had received full
payment on a note to a great amount, delivered it up
to the promissor; afterwards surreptitiously taken it back,
and commenced an action upon it. After the defendant
had been long vexed with imprisonment and expense,
trial approached, when the plaintiff, appalled with his
own guilt, suffered a nonsuit. Long after the time of

trial had elapsed, he made ample confessions, which were the first proof the defendant could obtain. Would not the injury be actionable ? In the case now before the court, a *judgment* for the defendant would, indeed, from rules of sound policy, have been a technical bar, by precluding all inquiry as to probable cause; but as the result has left it open for investigation, the court cannot inquire how unfortunate the plaintiff *might* have been, in obtaining testimony for the trial.

BY THE COURT. This declaration contains all the averments necessary to support an action for a vexatious suit. It is expressly averred, that the former action was altogether groundless, and known to be so to the plaintiff, and yet, with an intent to vex, the action was commenced, and prosecuted, until great expenses, sufficiently specified, were occasioned. These averments leave no room for probable cause ; and the plaintiff, under this declaration, might have proved, that the defendant had declared, that she knew she had no cause of action, but had commenced it with an intent to vex the plaintiff, without any expectation of a recovery. More complete vexation and malice cannot be imagined; and if this action will not lie, it is impossible to state one that will.

It has been laid down as a general proposition, that where in the original action the defendant was obliged to set up some collateral matter, by way of justification, which does not appear on the declaration, probable cause is admitted. This proposition is unsupported by precedent or reason. When a justification goes on the ground of a denial of the cause of action, it no more admits a probable cause than the plea of not guilty. The present plaintiff, in the action of slander, justified on the ground, that the words charged to have been spoken by him were true. This was an absolute denial of the cause of action; for it is essential to slander, that the

words spoken should be false; if they are true, the
plaintiff has no cause of action.

It is not necessary to decide whether a minor would
be liable, in any case. for a vexatious suit; for though
it appears, that the plaintiff in the original action was a
minor, when the suit was commenced, it also appears,
that she was of full age before the return-day, and that
she afterwards knowingly prosecuted the suit, with the
same intent to vex.

We are, therefore, of opinion, that there is error
apparent in the record before us; and that the judg-
ment be reversed.

*Judgment reversed,*