## MARTIN WENGERT and ABRAHAM WENGERT, executors of LUDWIG ZEARING, deceased, *against* DAVID BEASHORE.

An action for maliciously suing out a *capias ad respondendum*, and holding the defendant to bail, is not to be favoured; and clear proof of want of probable cause is necessary to support it.

As a general rule, it may be laid down, that such an action cannot be supported, when in the original action, the defendant was obliged to set up some collateral matter by way of defence, which did not appear on the declaration or the face of the instrument declared on.

Where such original action was brought by executors, maliciously and without probable cause; in an action therefor against them, they must be sued in their individual capacity; a writ and declaration calling them executors, is not mere description or surplusage, but is error.

ERROR to Lebanon county.

This was an action on the case brought by *David Beashore*, against *Martin Wengert* and *Abraham Wengert*, executors of *Ludwig*

(Martin Wengert and Abraham Wengert, executors of Ludwig Zearing, deceased, *v*. David Beashore.

*Zearing*, deceased, for maliciously suing out a *capias ad respondendum* against him, and requiring bail without probable cause of action.

The facts of the case were these: *Ludwig Zearing*, in his life-time, to wit, in 1817 held *David Beashore's* bond for three hundred and ninety-six dollars, and upon his death, it came into the hands of the defendants *Martin Wengert* and *Abraham Wengert*, his executors, who to April term, 1824, brought suit upon the said bond by issuing a *capias ad respondendum*, and required bail in five hundred dollars; the same day it issued, the defendant *Beashore*, was taken by the sheriff, and not being able to get bail, he was imprisoned. A rule of reference was entered by the defendant, and arbitrators were chosen, who met on the 12th April, 1824, the defendant then proved the consideration of the bond, and that it had failed; the arbitrators reported no cause of action. Upon the report being filed, the plaintiffs *Martin* and *Abraham Wengert*, by advice of their counsel, refused to discharge the defendant *Beashore*, from custody. No appeal was entered by the plaintiffs', and after the twenty days had elapsed, the defendant was discharged on *habeas corpus*, and brought the present suit to recover damages.

The following points were put to the court by the defendants, upon which they requested them to charge the jury:

1. That this action cannot be supported by the plaintiff, in its present form.

2. That no action for a malicious prosecution can be maintained against executors.

3. That the plaintiff has misconcieved his remedy; that if any injury has been sustained by him, he ought to have sought redress, by an action for false imprisonment against the defendants in their individual capacity, and that no action can be maintained by the plaintiff against the defendants in their representative capacity, as the executors of the said *Ludwig Zearing*, deceased, for the supposed injury set forth in the declaration.

4. That the plaintiff, before he can recover in this action, must prove malice in the defendants, and want of probable cause at the time suit was brought.

5. That when a plaintiff sues out a writ, such as in the present case, founded on the bond or writing obligatory of the defendants, no action for a malicious prosecution can be supported; for the want of probable cause, does not, nor cannot exist.

6. That defendants having called upon counsel, and issued the writ in pursuance of his directions, and acting as executors of *Ludwig Zearing*, excludes in law, every presumption of malice in the defendants.

7. The want of probable cause alone, and the defendants having failed to recover in the suit which they brought against *David Beashore*, are not circumstances sufficient in themselves to warrant

(Martin Wengert and Abraham Wengert, executors of Ludwig Zearing, deceased, *v*. David Beashore.)

the jury in finding a verdict in favour of the plaintiffs; unless the defendants knew the want of probable cause at the time they brought their suit. That the jury cannot infer malice in the defendants from the circumstance of their failing to recover in their suit on the bond against *David Beashore*.

To which the court answered:

1. This action can be supported and maintained by the plaintiff in its present form, the styling of the defendants executors is merely a personal description.

2. It cannot be maintained against them as executors.

3. This suit is not against them as executors, in their representative character; and they are answerable in this suit, in their individual capacity, notwithstanding they are styled executors, and the plaintiff has not misconcieved his remedy.

4. The jury must be satisfied, from all the circumstances given in evidence, that the suit against the present plaintiff was brought maliciously, and without probable cause; malice and want of probable cause both are necessary, and must be shown, in order to maintain an action for a malicious prosecution, either of a civil proceeding or criminal prosecution. Express malice is not required to be proved; malice may be implied. For if the plaintiffs case proves that the proceedings against him were groundless, and that the defendants knew it; then malice will be implied. Holding to bail where the plaintiff has no cause of action, and knows that he has no cause of action, if done for the purpose of vexation, entitles the party aggrieved to an action for a malicious prosecution.

5. Want of probable cause may exist where a suit is brought on a bond. The circumstance of a suit being founded on a bond or writing obligatory, is no bar to an action for a malicious prosecution.

6. If upon a fair representation of facts to the counsel, by the defendants, he advised the bringing of a suit upon the bond, and guided by that advice, they brought suit on that bond, the law will not impute malice to the defendants; for the clients ought not to suffer by the honest mistake of their counsel, if they innocently acted by his advice. But if they did not make a fair representation of facts to their counsel, and knew the proceedings on the bond were groundless, the law will impute malice to the defendants. Whether the suit was brought maliciously and for the purpose of oppressing the defendant, is a conclusion of fact to be drawn by the jury from all the circumstances of the case. It does not follow from the plaintiff's failure to recover in the action on the bond, that the suit was brought with a view to vex, and improperly injure the defendant in the case.

7. The want of probable cause alone, and the defendants having failed to recover in the suit which they brought against *David*

(Martin Wengert and Abraham Wengert, executors of Ludwig Zearing, deceased, *v.* David Beashore.)

*Beashore,* are not circumstances in themselves sufficient to warrant the jury in finding a verdict in favour of the plaintiff, unless the defendants knew the want of probable cause at the time when they brought their suit. The jury cannot infer malice in the defendants, from the circumstance of their failing to recover in their suit on the bond.

The charge of the court was assigned as error.

*Kline* and *Weidman,* for plaintiff in error.

*J. A. Fisher,* for defendant in error.

The opinion of the court was delivered by

*Ross, J.*—The action for malicious prosecution, is very different from that of maliciously and vexatiously arresting and holding defendant to bail. Many reasons might be assigned why the one should be sustained, which would not apply to the other. In the former, the defendant, even if acquitted, recovers no costs; in the latter, a verdict in favour of defendant entitles him to costs. In the former, the defendant has no other redress for any injury he may have received; in the latter, he may cite the plaintiff before a judge to shew his cause of action, and if no sufficient cause be shown, he will be discharged on common bail. In the former, if felony, punishable with death, he may not be allowed to give bail; in the latter, the defendant is always allowed to give bail. In the former, he can only be exonerated by a trial and acquittal; in the latter, the defendant may have any oppressive, vexatious or illegal process set aside, on motion to the court. In the former, the defendant cannot demand a writ of error as a matter of right; in the latter, he is entitled to it. In the former, the defendant's life may be put in jeopardy; in the latter it never can: no punishment can be inflicted on him. In the former, the prosecutor gives no bail; in the latter the plaintiff, until of late, must have given real pledges, who on failure of plaintiff to prosecute his suit, &c. were liable to be amerced, and the plaintiff himself was amerceable *pro falso clamore,* liable to costs. See 1 *Sel. Prac. Introd.* 49, 50, 59. *Bul. N.P.* 11. The action for malicious prosecution, properly so called, has often been brought in this State, and sustained by the courts; the action for maliciously and vexatiously arresting and holding defendant to bail, it is believed, has seldom been brought in this State, and has never received a judicial recognition. Yet it must be understood that no doubt is intended to be intimated of its lying in proper cases, and under proper restrictions; but it is not to be favoured. Enough has been said to show, there is a substantial difference between the two descriptions of action. Yet from not attending to the want of similarity between them, they have been, in modern times, considered as analogous. The same decisions and principles of law have been applied to both.

31

(Martin Wengert and Abraham Wengert, executors of Ludwig Zearing, deceased, *v.* David Beashore.)

The practice of the courts in England, as well as the law as to arrests, and holding to bail, is very dissimilar from the practice in this State. In England, by the statute 12 *Geo.* I. c. 29, certain requisites must be complied with, before any one can be arrested on civil process. The courts strictly require a positive affidavit; the sum must be specified in it, which sum must be endorsed on the back of the writ or process: for which so endorsed the sheriff shall take bail, and for no more. If no such affidavit and endorsement be made, the defendant is not to be arrested, let the amount of debt be what it may. 1 *Sel. Prac. Introd.* 59.

In this State, it has long been the practice to issue the *capias* without any affidavit, except in a very few cases sounding exclusively in damages, on which the attorney directs the endorsement of such bail as he may think sufficient. If the defendant think himself aggrieved, he may apply to a single judge in vacation, or to the court in term time, to be discharged on common bail; or to have it mitigated. Until application is made to the judge or to the court, the affidavit of the debt is seldom made; and even then the plaintiff's attorney often obtains time to notify the plaintiff to come in and make the requisite affidavit. Many of those suits are brought with a view to submit them to arbitration, under the law of 1806, by which means they partially obtain, it is said, the benefit of a bill of disclosure; acquiring from the investigation before the arbitrators, the evidence of a cause of action they had nothing but a mere suspicion of before.

By the rules of court, where the affidavit is not positive, but yet sufficient to convince the judge that there is good cause of action, especially where it is founded on a bond, note, letter, or other paper signed by the defendant, the judge may, at his discretion, hold the defendant to bail: thus giving a power to the judge to dispense with the production of a positive affidavit of the debt and the amount thereof, if a paper signed by the defendant is produced. The rule indicates in strong terms, and in language that cannot be misunderstood, that a bond signed by the defendant is a probable cause of action. These matters have been brought into view for the purpose of shewing, that instead of relaxing the restrictions and limitations to which a malicious and vexatious suit is subjected in the courts of Great Britain, there is every reason here, that exists there, with many additional ones peculiar to this State, arising out of the nature and mode of our proceedings, why these restrictions and limitations should be increased and not diminished. In the case of *Sterling* against *Adams*, reported in 3 *Day*, 411, in which most of the cases are brought under review, analyzed, commented upon, and contrasted with great ability, the counsel for the plaintiff admitted " that a person must be guilty of a very gross abuse of the right of suing, before he will be liable for vexation. To the ex-

.(Martin Wengert and Abraham Wengert, executors of Ludwig Zearing, deceased, *v.* David Beashore.)

ercise of that right great indulgence is given. If the object of the plaintiff be in any degree to obtain right, his temper is not to be regarded. When all the facts, known or believed by the plaintiff, or existing without his knowledge, would afford any probability to an honest mind that there ought to be a recovery, probable cause in law exists, and a suit, however unsuccessful, injurious, or vindictive, will entitle the defendant to no remuneration. Here is often great wrong and no remedy—it is "*damnum absque injuria.*" A man, from a malicious motive, may take upon himself a prosecution for real guilt, or he may from circumstances which he really believes, proceed upon the apparent guilt, and in neither case, is he liable to this kind of action, 6 *Mod.* 73. To support it there must be express malice, without any colour of cause. *Holt* 4. 6 *Mod.* 25. He may therefore from malicious motives, proceed to collect a real debt by the process of *capias* and bail, or he may from circumstances which he really believes, proceed upon the apparent evidence of debt, to collect it by *capias* and bail, and in neither case be liable to an action for vexation. The plaintiff's declaration in this action shews, that there was a probable cause for the original suit. It admits the suit was founded on a bond given to the testator, *Ludwig Zearing,* in his lifetime. Want of probable cause cannot be implied from an acquittal of a defendant in a criminal prosecution, or a failure to recover in a civil suit. 2 *Selw. N. P.* 1057 *in note* 2. *Day's Coke upon Litt.* 161, *a, note* 297. Although an action for a malicious prosecution will lie, it is not to be favoured. 1 *Salk.* 15. *Bul. N. P.* 14. 1 *Wilson,* 231. It is difficult to define with precision in what cases, and under what circumstances this action will lie. It may however be safely laid down as a general proposition, that, where in the original action the defendant is obliged to set up some collateral matter by way of justification, or defence, which does not appear on the declaration, or the face of the instrument declared on, probable cause is admitted. This proposition is supported by precedent and reason. 3 *Day's Rep.* 432. These principles when viewed collectively, manifestly shew, that the plaintiffs' in error had sufficient probable cause to shield them from this action, even if the suit had been against them in their individual capacity. But this suit is clearly against them in their representative capacity as executors. It is for acts done by them as executors. The declaration recites that the writ was issued by them as executors on a bond given to the testator, and the proceedings which took place on that writ, as the foundation of defendant's claim to damages. But it is contended that all these recitals may be rejected as surplusage, as merely descriptive of the persons; and so the court below charged the jury. The answer to this position will be found in *Robins* v. *Robins,* 1 *Salk.* 15, in which the complaint was that the plaintiff caused the defendant to be arrested and held to bail,

(Martin Wengert and Abraham Wengert, executors of Ludwig Zearing, deceased, *v.* David Beashore.)

where by law, no bail was required—*Per Holt, Ch. Jus.* "This is a tender action, you must shew that the plaintiff being indebted to the defendant in so much, the defendant took out such a writ for so much more, on purpose to hold him to bail, you should set out the writ." If it is necessary to set out the writ in the original suit, it is equally true, that it is necessary to prove it as set out. The record of the original action must be produced on the trial, and given in evidence 2 *Selw. N. P.* 1062. It must correspond with allegations in the declaration, or it cannot be given in evidence. It therefore cannot be considered as surplusage. It is an essential and material allegation without the proof of which the plaintiff could not support his action. The declaration ought to set forth the sum due, and the process specially, and that the first action is determined. See 2 *Selw. N. P.* 1060. *Yelv.* 110. The action then is against the plaintiffs in error as executors, for acts done by them as executors. It is the first attempt, it is believed, that ever has been made to support such an action. No such case has been produced, and it is believed none such can be found in the books, or the industry of the defendant's counsel would have discovered it. It would be an extension of the remedy by this kind of action, which, it has already been shewn, ought never to be permitted. Executors can only be made liable in their individual capacity, if at all, for acts done by them in their official character, by such irregular, improper and gross misconduct as would render them tresspassers *ab initio*. In such a case, trespass *vi et armis*, and not *case* would be the remedy.

Deplorable would be the situation of executors, if they would be made liable in actions for vexatious suits. They are bound to use every diligence in collecting decedent's debts. Not only to know themselves that they could not be recovered, but to be able to shew satisfactorily in the settlement of their accounts, to a querulous legatee or creditor, that they could not be collected. They may know a book debt or note is barred by the statute of limitations; but they cannot know that the debtor will avail himself of that defence. They may know that a bond *will be* presumed to have been paid from lapse of time; or that the obligor has some defence arising out of other transactions, or depending on some collateral matters involving intricate questions of law and fact. But they are not therefore to refrain from bringing suit; nor to be deterred from doing so, by being in danger of subjecting themselves to an action for vexation. This would be contrary to policy and common sense, because it would be to say to them if you neglect to enforce the collection of the decedent's debts with all due diligence, you shall be liable for such neglect, but if you attempt to do it, by the ordinary process of the law, you must run the risk of rendering yourselves liable to a vexatious and malicious suit. This would be

(Martin Wengert and Abraham Wengert, executors of Ludwig Zearing, deceased *v.* David Beashore.)

placing executors on the bed of *Procrustes.* It therefore appears that on an examination of this cause on principle, this action cannot be supported. The charge of the court on the first point that it could be supported, and that styling the defendants executors, was merely personal description, was incorrect. If it be examined by a comparison with the decisions in each particular case, where the question has arisen, what shall amount to a reasonable or probable cause, it will be found that the court were equally incorrect. In this cause, the bond to the testator in his lifetime, coming to the hands of the executors, appearing on the face of it, to be due and unsatisfied, was much stronger probable cause than has been considered in most cases found in the books, sufficient to protect plaintiffs from actions for malicious prosecutions or vexatious suits. Many of the cases will be found collected in *Day's* note to *Coke upon Litt.* page 161, *a, note* 297, and in 3 *Day's Rep.* 411. *Selw. N. P.* 1057–8. A sufficient probable cause is laid in the defendants declaration in this very action; no averment being laid that the plaintiff knew the bond was paid, or in any way satisfied. The question of probable cause is a mixed proposition of law and fact. Whether the circumstances, alledged to shew it probable or not probable, are true and existed, is a matter of fact; but whether supposing them true, they amount to a probable cause, is a question of law. 1 *Wilson,* 232. *Day's Coke upon Litt.* 161, *a, note* 297. *Bul. N. P.* 14. The plaintiffs in error had, clearly, reasonable and probable cause for arresting the defendant and holding him to bail. The court should have so instructed the jury. They should have informed them that the fact not being disputed, but expressly set forth in defendant's declaration, that the original action was founded on a bond, which was given to *Zearing* in his lifetime, and which came to the hands of plaintiffs in error as executors, appearing on its face to be due and unsatisfied, was a sufficient probable cause to justify the plaintiffs' in error in arresting and holding defendant to bail, and that the verdict must be for the plaintiffs' in error. There was also error, therefore, in the charge on the fourth and fifth points. The other points of the charge are too vague to give any accurate information to the jury. Upon the whole, it sufficiently appears that in this cause, the plaintiff below should have been nonsuited, or not permitted to sustain his action.

Judgment reversed.